UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MICKIE JARNEVICH                              CASE NO. 18-cv-1117

VERSUS                                        JUDGE TERRY A. DOUGHTY

ANDREW SAUL, COMMISSIONER OF SOCIAL           MAG. JUDGE KAREN L. HAYES
SECURITY ADMINISTRATION

<u>REPORT & RECOMMENDATION</u>

Before the court is plaintiff's petition for review of the Commissioner's denial of social

security disability benefits.   The district court referred the matter to the undersigned United

States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) and (C).   For the reasons assigned below, it is recommended that the decision of

the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

<u>Background & Procedural History</u>

Mickie Jarnevich protectively filed the instant application for Title II Disability Insurance

Benefits on April 4, 2016.   (Tr. 70, 144-149).   He alleged disability as of July 1, 2015, because

of a herniated/cracked disc in his lower back.   (Tr. 172, 182).   The state agency denied the

claim at the initial stage of the administrative process.   (Tr. 70-81, 84-87).   Thereafter,

Jarnevich requested and received a May 16, 2017, hearing before an Administrative Law Judge

("ALJ").   (Tr. 41-69).   However, in an August 25, 2017, written decision, the ALJ determined

that Jarnevich was not disabled under the Social Security Act, finding at step five of the

sequential evaluation process that he was able to make an adjustment to other work that exists in

significant numbers in the national economy.   (Tr. 26-37).   Jarnevich appealed the adverse

decision to the Appeals Council.   On July 21, 2018, however, the Appeals Council denied

Jarnevich's request for review; thus the ALJ's decision became the final decision of the

Commissioner.   (Tr. 1-3).

On August 29, 2018, Jarnevich sought review before this court.   He alleges three discrete

errors:

1) The Appeals Council committed reversible error by failing to remand this matter to the
   ALJ for consideration of newly submitted evidence;

2) The court should remand the case with instructions to make a specific finding regarding
   applicability of the "Worn-Out Worker" rule; and

3) The ALJ failed to properly consider plaintiff's subjective complaints.

Following the submission of briefs, the matter is ripe.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.   *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).   Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).   The Commissioner's decision is not

supported by substantial evidence when the decision is reached by applying improper legal

standards.   *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).   Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. at 401.   Substantial evidence lies somewhere between a

scintilla and a preponderance.   *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).   A finding

of no substantial evidence is proper when no credible medical findings or evidence support the

ALJ's determination.   *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).   The reviewing

court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of

the Commissioner.    *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.    *See* 42 U.S.C. § 423(a)(1)(D).    The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."    42 U.S.C. § 423(d)(1)(A).    Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.    *See* 42 U.S.C. § 423(d)(2)(A).    Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.    *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.    *See* 20 C.F.R. §§ 404.1520, 416.920.    The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be

made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).   When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.   *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).   If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.   *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period.   (Tr. 31).   At step two, she found that the claimant suffered severe impairments of lumbar stenosis and lumbar radiculopathy.   (Tr. 31-32).[1]   The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.   (Tr. 32).

### II.     Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity

---

[1]   She further found that the claimant's medically determinable impairments of hypertension and obesity were non-severe.   *Id*.

4

("RFC") to perform light work,[2] except that he can only stand and/or walk for four hours out of eight hours, with the ability to alternate sitting and standing positions every 30 minutes for one to two minutes while remaining at the workstation and without being off task.   The claimant also can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, and crouch; but never crawl.   (Tr. 32-35).

### III.    Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four that the claimant was unable to perform his past relevant work.   (Tr. 35-36). Accordingly, she proceeded to step five.   At this step, the ALJ determined that the claimant was an individual closely approaching advanced age, with a limited education, and the ability to communicate in English.   *Id*.   Transferability of skills was not an issue.   *Id*.

The ALJ then observed that given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled.   20 C.F.R. § 404.1569; Rules 202.11, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 36-37.   However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work.   *Id*.   In response, the VE

---

[2]   Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

identified the representative jobs of office helper – light, *Dictionary of Occupational Titles* ("DOT") Code # 239.567-010 - light; receptionist – light, DOT # 237.367-018; and call order clerk – light DOT # 209.667-014, that were consistent with the ALJ's RFC and the claimant's vocational profile.   (Tr. 37, 64-67).[3]

## Non-Exhaustive Chronology of Relevant Medical Evidence

**Central Chiropractic**

| Dates | Notes |
|---|---|
| September 8, 2014 | Jarnevich saw Jonathan Crosby, D.C., for treatment of low back pain on the right side that went down his right leg.   He described his pain as a five on a ten point scale (5/10).   Digital palpation revealed tenderness, pain, and edema in the lumbar region at L2, L3, L4, L5 and sacrum on the right side.   He had reduced range of motion of the dorso-lumbar spine.   (Tr. 269). |
| October 29, 2014 | Jarnevich returned to Crosby with complaints of continuous throbbing discomfort in the low back.   He described his pain as a 5/10 that was present 100 percent of the time.   His low back was hurting again because he had been cutting firewood.   (Tr. 268). |
| April 28, 2015 | Jarnevich complained of continuous throbbing discomfort in his low back, which decreased with movement.   He described his pain as a 5/10 that was present 100 percent of the time.   He had been working seven days per week on the pipeline, and his low back was sore and swollen. (Tr. 267). |
| October 8, 2015 | Jarnevich complained of continuous, numbing discomfort in the low back, which he characterized as a 6/10, that was present 100 percent of the time.   (Tr. 266). |
| October 26, 2015 | At this visit, Jarnevich detailed frequent aching discomfort of the low back that was 5/10 in intensity, but which was present only 60% of the time.   (Tr. 265). |
| November 2, 2015 | Plaintiff complained of frequent aching discomfort in the low back.   The discomfort decreased with movement.   He described the intensity of the pain as a 4/10, with the discomfort occurring about 60 percent of the time.   Crosby stated that plaintiff's prognosis was guarded and |

---

[3] The VE responded that for the office helper, receptionist, and call order clerk jobs, there were 71,700, 89,762, and 213,500 positions, respectively, available nationally.   (Tr. 37, 64-67).   This incidence of work constitutes a significant number of jobs in the "national economy."   42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

|  | uncertain.   As with Jarnevich's prior visits, there was no change after the adjustment which meant that there was a 60 percent chance that Jarnevich needed long-term treatment.   Plaintiff continued to suffer with pain, discomfort, and limitations while performing activities of daily living.   His right leg pain was somewhat better, but his low back was still swollen on the right side.   (Tr. 264). |
|---|---|

**University Health - Monroe**

On December 7, 2015, plaintiff saw William Foust, M.D., at University Health -Monroe. (Tr. 278-280).   Foust noted that plaintiff's back pain was a constant, chronic problem that had worsened in the past seven days.   *Id.*   Plaintiff described the pain as aching, constant, cramping, pressure-causing, radiating, spasming, and with associated tightness.   *Id.*   It radiated to the right thigh and right knee.   *Id.*   The severity of the pain was an 8/10.   *Id.*   Symptoms were aggravated by bending, coughing, position, standing, and twisting.   *Id.*   Associated symptoms included leg pain and tingling.   *Id.*   Plaintiff had tried NSAIDs and analgesics, but with no relief.   *Id.*   Furthermore, his hypertension was a chronic problem.   *Id.*   Associated symptoms included anxiety and malaise/fatigue.   *Id.*   His musculoskeletal examination showed tenderness, with no edema.   *Id.*   Foust diagnosed lumbar discogenic pain syndrome and essential hypertension.   *Id.*

A December 7, 2015, x-ray of the lumbar spine showed mild degenerative disc and joint disease in the lower lumbar spine, with no acute fracture.   (Tr. 281).

On December 9, 2015, plaintiff returned to Dr. Foust.   (Tr. 282-284).   The severity of his lower back pain was a 9/10.   *Id.*   He had tried analgesics, muscle relaxants, and NSAIDs, which provided moderate relief.   *Id.*

Plaintiff obtained an MRI of the lumbar spine on January 4, 2016.   (Tr. 286-287).   The imaging showed mild disc space narrowing at L5-S1 level, with disc dessication at the three

lowest lumbar levels.   *Id.*   At the L3-4 level, there was slight acquired central canal stenosis, but the neural foramen were maintained.   *Id.*   At the L4-5 level, there was posterior disc bulging, with mild acquired central canal stenosis.   *Id.*   At the L5-S1 level there was central and right paracentral disc herniation, which encroached mildly on the canal and moderately on the right S1 nerve root and slightly on the left S1 nerve root.   *Id.*

Plaintiff returned to Dr. Foust on March 23, 2016.   (Tr. 290-292).   Foust told plaintiff that he had impinged nerves in his low back that caused the radiating pain and could be involved with his intermittent leg weakness.   *Id.*   Foust referred plaintiff to neurosurgery, but they wanted physical therapy tried first.   *Id.*   Foust recommended that plaintiff apply for disability because the pain would continue to worsen – "he does physical labor which is not compatible with his job description.   At this man's age I doubt the success of retraining."   *Id.*   Foust further noted that the problem occurred constantly, and that it had waxed and waned since onset. *Id.*   Plaintiff described the severity of the pain as a 9/10.   *Id.*   Analgesics, heat, and NSAIDs provided mild relief.   *Id.*   Plaintiff's hypertension was controlled.   *Id.*   Foust diagnosed lumbar discogenic pain syndrome, lumbar radiculopathy, and essential hypertension.   *Id.*

Foust also penned a note on March 23, 2016, in which he stated that plaintiff was a patient of his who had undergone an MRI that documented disc herniation with nerve root impairment rendering work of any type impossible.   (Tr. 271).   Foust asked the undisclosed addressee to please evaluate plaintiff for disability and offered to provide more information if needed.   *Id*.

**University Health - Shreveport**

On April 19, 2016, plaintiff was seen at University Health – Shreveport by Christopher Storey, M.D.   (Tr. 302-305).   Plaintiff presented with a five year history of low back pain with right, lower extremity radiculopathy.   *Id.*   Plaintiff smoked 1/3 of a pack of cigarettes per day.

8

*Id.*   His low back pain was a 4/10 at that time, but increased to 10/10 when ambulating for long periods.   *Id.*   Back flexing helped plaintiff with pain relief.   *Id.*   Jarnevich was very apprehensive about back surgery.   *Id.*   He took ibuprofen for pain.   *Id.*   Straight leg tests were normal bilaterally.   *Id*.   Motor examination was 5/5 in the lower extremities.   *Id.*   His sensory examination was normal.   *Id.*   Storey opined that plaintiff was a candidate for surgery.   *Id.*

**Agency Physician/Psychologist Opinions**

On May 15, 2016, non-examining agency physician, Rebecca Meriwether, M.D., reviewed the record and completed a physical RFC form.   (Tr. 77-79).   She indicated that plaintiff was able to perform the exertional demands of light work, reduced by the ability to only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/scaffolds.   *Id.*

On May 24, 2016, non-examining agency psychologist, Julia Wood, Ph.D., reviewed the record and determined that plaintiff had no mental medically determinable impairments.   (Tr. 75-76).

**Morehouse Community Medical Center**

Plaintiff was seen by nurse practitioner Jason Hoskins on April 10, 2017.   (Tr. 313-317).   Hoskins noted that plaintiff took ibuprofen three times per day, but still had significant pain when ambulating.   *Id.*   Plaintiff advised Hoskins that he was not going to stop smoking cigarettes.   *Id.*   He also reported back pain, but without swelling in the extremities.   *Id.*   He further disclosed shooting pain in the right lower extremity, but no fever.   *Id*.   He had normal motor strength and normal movement of all extremities.   *Id*.   However, he had an irregular gait with a limp.   *Id.*   Hoskins prescribed an NSAID for back pain, and advised plaintiff to follow-up with LSU neurosurgery, especially if his symptoms worsened.   *Id*.

Jarnevich returned to the nurse practitioner on May 2, 2017.   (Tr. 318).

**"New" Evidence from University Health - Monroe**

Plaintiff returned to Dr. Foust on April 25, 2016.  (Pl. Brief, Exh. 1).  His pain radiated
to his right foot, right knee, and right thigh.  *Id*.  The severity of his pain was a 9/10.  *Id.*
Associated symptoms included headaches, leg pain, and tingling.  *Id.*  He had tried NSAIDs
and heat for the symptoms, which provided moderate relief.  *Id.*  Compliance problems
included his diet.  *Id.*  Foust diagnosed lumbar stenosis with neurogenic claudication and
essential hypertension.  *Id.*

Plaintiff next saw Dr. Foust on June 17, 2016.  *Id*.  At that time, he still had lumbar
stenosis and neurologic claudication with decreased strength in his right leg.  *Id*.  Foust noted
that plaintiff had been turned down for SSI, but added that he was debilitated to the point where
he would be a danger to himself and co-workers in construction – his only work for his adult life.
*Id*.  Because Jarnevich only had a 7-8[th] grade formal education and problems with extended
sitting, Foust commented that it was unlikely that he could be retrained.  *Id.*  Meanwhile,
NSAIDs and heat provided moderate relief to his low back pain symptoms.  *Id.*  Jarnevich had
positive straight leg raise worse on right.  *Id*.  He also had mild decrease in motor strength.  *Id.*
Foust diagnosed lumbar stenosis with neurological claudication, lumbar radicular pain, and
essential hypertension.  *Id.*

<u>Analysis</u>

**Assignment of Error No. 1:  New Evidence**

In connection with his request for review to the Appeals Council, plaintiff submitted
"new" evidence consisting of two progress notes from Dr. Foust which were dated April 25,
2016, and June 17, 2016.  *See* discussion, *supra*.  In other words, the medical evidence
documented office visits that occurred approximately one year before the May 16, 2017, ALJ
hearing.  However, plaintiff, who was represented by a non-attorney "social security specialist"

at the time, *see* doc. # 322, did not update his file to include these additional medical records prior to the ALJ's decision.   Instead, after the ALJ's unfavorable decision, plaintiff retained an attorney who managed to obtain these records, and, by all accounts, forwarded them to the Appeals Council for consideration.   *See* Facsimile Trans. Verification Report; Pl. Brief, Exh. 2. It appears, however, that, for whatever reason, Dr. Foust's additional progress notes did not make their way into plaintiff's SSA file/record, and therefore, the Appeals Council did not consider or even mention this additional evidence.   Plaintiff contends that because of the Commissioner's omission/error, the court should remand the matter for consideration of the misplaced evidence.   The court disagrees.

As an initial matter, the regulations provide that the Appeals Council will review a case, among other reasons, if "[s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."   20 C.F.R. § 404.970(a)(5).   Furthermore, by the time of the ALJ's decision in this matter, paragraph (b) of § 404.970 stated that the Appeals Council will only consider additional evidence under paragraph (a)(5) if the claimant shows good cause under one of three specified rationales for failing to submit the evidence timely (i.e., at least five business days before the ALJ hearing) in accordance with 20 C.F.R. § 404.935.   20 C.F.R. § 404.970(b).[4]

---

[4] The regulations were amended in December 2016, with an effective date of January 17, 2017, but compliance was not required until May 1, 2017.   (81 Fed. Reg. 90994).   Moreover, the ALJ's decision cited the five business day requirement for evidence under § 404.935(a).   (Tr. 29).   In addition, the Appeals Council stated in its decision that if it received additional evidence, the plaintiff had to show good cause for failure to submit the evidence earlier.   (Tr. 1-2).   Finally, the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") specifies that the good cause provisions of the Appeals Council's consideration of additional

Here, plaintiff proffers no explanation for his failure to submit the evidence to the ALJ for consideration at the hearing level; thus, he remains unable to demonstrate good cause for the belated submission of the additional evidence to the Appeals Council, in the first instance.[5] Under these circumstances, the Appeals Council will not consider the evidence.   20 C.F.R. § 404.970(b).

Even if plaintiff had established good cause for submission of the additional evidence to the Appeals Council, the regulations do not require the Appeals Council to discuss newly submitted evidence or to provide reasons for denying review.   *Sun v. Colvin*, 793 F.3d 502 (5th Cir. 2015).   Citing a Fourth Circuit decision, the Fifth Circuit held that when "significant" new evidence, (i.e., when it arguably undermines the stated rationale for the ALJ's decision) is presented to the Appeals Council, then the courts must reverse and remand the matter to the Commissioner to consider and weigh the effect of the evidence.   *Sun, supra* (citing *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011).

However, under the regulations as cited above, the Appeals Council is obliged to consider additional evidence only when it is new, material, and related to the period on, or before the date of the ALJ's decision.   *Meyer, supra* and 20 C.F.R. § 404.970(a).   Evidence is considered "new" "if it is not duplicative or cumulative" and "material" if there is "a reasonable

---

evidence apply to all Title II claims filed after June 30, 1980.   (HALLEX § I-3-3-6 (2017)).   Thus, the good cause requirement applies to the instant case.   Even if did not, the court would reach the same result.   *See* discussion, *infra*.

[5] Interestingly, the additional progress notes from Dr. Foust include a notation on the bottom of each page stating that they were printed on March 10, 2017, i.e., some two months *before* the ALJ hearing in this matter.   This suggests either that someone at University Health-Monroe decided to print these additional records and to hold on to them despite the apparent existence of the records in electronic format, *or* the records were printed and contemporaneously provided to plaintiff and/or his non-attorney representative, but not forwarded to plaintiff's SSA file.

possibility that [it] would have changed the outcome."  *Meyer, supra* (citing *Wilkins v. Sec'y,*

*Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).   Consequently,

evidence submitted by a claimant to the Appeals Council does not per se require remand to the

Commissioner merely because the Appeals Council did not address the evidence in its decision.

*See Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163

Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) ("*Higginbotham II*").   Rather, in

appropriate cases, the courts may assign their own reasons for discounting the significance of

evidence presented initially to the Appeals Council.[6]

　　　　Here, plaintiff theorizes that the additional evidence "might well have made a difference"

had he presented it to the ALJ because the ALJ stated in her decision that

> (1) the fact that the "record contains no further treatment after April 2016 until April
> 10, 2017"; (2) the "overall benign findings on physical examinations, other than
> occasional tenderness and decreased deep tendon reflexes and findings on objective
> testing"; (3) the "claimant reported his pain with generally at a four or five out of
> 10 in severity, which was exacerbated only by prolonged standing and walking . . .
> "; and (4) the ALJ's finding that the RFC finding was supported, in part, by "the
> overall benign findings on physical examination other than occasional tenderness
> and decreased deep tendon reflexes."

(Pl. Brief, pg. 10) (citing Tr. 34-35).

Upon review, however, the court is not persuaded that the two additional progress notes by Dr.

Foust significantly or materially differ from the other medical records.   As such, the additional

progress notes are neither "new," nor material.

　　　　First, the April 25 progress note was dated only one week after plaintiff saw Dr. Storey.

---

[6]  In *Higginbotham II*, the panel discounted new evidence from claimant's treating physician as
conclusory and unsupported.   *Higginbotham, II, supra*.   In *Garth v. Astrue*, the Fifth Circuit
downplayed the significance of new evidence from plaintiff's treating physician because it
contradicted his own treatment notes and plaintiff's testimony.   *Garth v. Astrue*, 393 F. App'x
196, 199 (5th Cir. 2010).

Moreover, the June 17 visit was only two months after the April appointment, and thereafter, ten months elapsed before plaintiff decided to seek treatment from a nurse practitioner.   There is no indication that at the April and June office visits, Foust changed plaintiff's medication or offered him any other treatment options.   In fact, Foust noted that plaintiff's NSAIDs (Non-steroidal Anti-Inflammatory Drugs) and heat treatment provided him with moderate relief.

Second, plaintiff emphasized that the additional progress notes documented pain that was a 9/10.   However, Foust had noted pain that was an 8 or 9/10 on prior visits.   Furthermore, during an examination with Dr. Storey that was sandwiched between two visits with Dr. Foust, plaintiff reported his pain as a 4/10, that escalated to 10/10 with walking for long periods.

Third, plaintiff seems to suggest that Dr. Foust's missing records reflect some material exacerbation of his symptoms.   In support of this argument plaintiff noted that Dr. Foust found in April and June that he had tenderness to palpation of the lumbar paraspinous musculature and interspace with spasm.   However, Foust made these same findings in December 2015 and March 2016.   *See* Tr. 283, 291-292.   Although Foust noted a mild decrease in motor strength in June 2016, by May 2017, the nurse practitioner documented normal motor strength.   (Tr. 315).

In sum, plaintiff has not demonstrated that his additional evidence is new or material. Accordingly, the court finds that remand is not warranted.

**Assignment of Error No. 2:   Worn-Out Worker Rule**

Plaintiff contends that, based on his work history and vocational factors, the ALJ erred by failing to make a finding as to whether he was disabled per se under 20 C.F.R. § 404.1562(a), also known as the "Worn-Out Worker" rule.   The regulation provides that,

> (a) If you have done only arduous unskilled physical labor. If you have no more than a marginal education (see § 404.1564) and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) (see §§ 404.1520(c), 404.1521, and 404.1523), we will consider you

14

unable to do lighter work, and therefore, disabled.

20 C.F.R. § 404.1562(a).

The Worn-Out Worker rule contemplates "a set of functional and vocational limitations which present such an unfavorable vocational profile that an inability to make a vocational adjustment to other work may be inferred if the person meets these requirements and is not engaging in substantial gainful activity." *Titles II & XVI: Med.-Vocational Profiles Showing an Inability to Make an Adjustment to Other Work*, SSR 82-63 (1982).

Plaintiff argues that remand is required pursuant to *Vasquez v. Heckler*, 736 F.2d 1053, 1054 (5th Cir.1984). In *Vasquez*, the claimant presented evidence and argued to the ALJ that he satisfied the requirements for disability under § 404.1562. *Vasquez v. Heckler*, 736 F.2d 1053, 1054 (5th Cir.1984). The ALJ, however, failed to address plaintiff's argument and otherwise failed to make a finding as to whether plaintiff met the criteria for disability under § 404.1562. *Id*. In light of the ALJ's omission, the Fifth Circuit vacated the district court judgment and remanded the case with instructions to return the matter to the Commissioner for further proceedings in accordance therewith. *Id*.

Here, unlike *Vasquez*, plaintiff did *not* argue to the ALJ or to the Appeals Council that he satisfied the requirements for the Worn-Out Worker rule. Despite plaintiff's silence on this issue at the administrative level, he nonetheless contends that the ALJ had a duty to address the matter independently. The court observes that although the "ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that h[er] decision is an informed decision based on sufficient facts," reversal is warranted on that basis only when the claimant demonstrates resulting prejudice. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (internal

quotes omitted).

Similarly, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.   If prejudice results from a violation, the result cannot stand."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citations and internal quotation marks omitted).   Therefore, an ALJ's omission does not require remand unless it affected the claimant's "substantial rights." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).   In other words, the error may be harmless. *Id.* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)). A claimant's substantial rights are affected when, absent creditable explanation from the ALJ, the evidence otherwise compels a finding favorable to the claimant.   *Griffin v. Colvin*, No. 15-186, 2016 WL 6476994, at *5 n.11 (S.D. Tex. Oct. 31, 2016), *judgment entered,* 2016 WL 6496365 (S.D. Tex. Oct. 31, 2016) (citation omitted).

Plaintiff has not made the requisite showing here.   To reiterate, a claimant will be deemed disabled pursuant to the Worn-Out Worker rule if he:   1) has a marginal education, 2) has at least 35 years of arduous unskilled physical labor work experience, 3) is not currently working; and 4) is no longer able to perform past relevant work because of a severe impairment(s).   *Carter v. Colvin*, No. 12-0808, 2014 WL 239104, at *3 (N.D. Tex. Jan. 22, 2014).

At minimum, plaintiff did not adduce evidence to show that he has a marginal education. The regulations define marginal and limited education, as follows:

> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational

16

> qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.1564(b)(2)-(3).

In the absence of contradictory evidence, the Commissioner will use the claimant's numerical grade level to determine his educational abilities. 20 C.F.R. § 404.1564(b).

In this case, plaintiff testified that he completed the eighth grade, which presumptively supports a finding that he had a limited education. (Tr. 45). Plaintiff argues that because he apparently had someone other than himself complete his disability paperwork this necessarily indicates that he was unable to write. However, at the hearing when the ALJ asked plaintiff whether he could read and write English, he answered in the affirmative. (Tr. 46). Plaintiff further conceded that he could do basic math, such as adding, subtracting, and making change. *Id*. In fact, on his disability forms, plaintiff stated that he read every day, and had no trouble doing so. (Tr. 217). He also could handle a savings account and use a checkbook/money orders, which, of course, entails writing. (Tr. 216). Finally, as part of his past relevant work as a heavy equipment operator, plaintiff acknowledged that he had to write or complete reports. (Tr. 227).

In addition, the Worn-Out Worker rule requires the performance of 35+ years of "arduous" work means work that is "*primarily* physical work requiring a high level of strength or endurance." *See* SSR 82-63. Here, however, while plaintiff's past work was performed at the "heavy" exertional level and he frequently had to lift 25 pounds or more, he also stated that he "mostly" operated equipment to move pipe and that roughly half of his day was spent sitting down. *See e.g.*, Tr. 230. In other words, his work did not *primarily* require a high level of strength or endurance.

17

In sum, insofar as the ALJ may have erred by failing to make a specific a finding regarding the applicability of the Worn-Out Worker rule, plaintiff has not demonstrated that the error affected his substantial rights or that he was prejudiced thereby.

**Assignment of Error No. 3:    Subjective Complaints**

Plaintiff contends that the reasons proffered by the ALJ to reject his subjective description of symptoms are not supported by the record.[7]   When assessing disability, the ALJ is required to consider all symptoms, including pain, and the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence, together with other evidence.   20 C.F.R. § 404.1529(a).   In evaluating the intensity of symptoms, including pain, the ALJ will consider all available evidence, including medical history, medical signs and laboratory findings, and statements about how the symptoms affect the claimant.   *Id*.   The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.   20 C.F.R. § 404.1529(c)(4).   However, the ALJ need not follow formalistic rules in her assessment.   *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Relatedly, pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."   *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).   The ALJ's decision regarding the actual extent of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by

---

[7] Previously, plaintiff's argument would have been characterized as a challenge to the ALJ's credibility determination.   However, in 2016-2017, the Commissioner issued a new social security ruling that dispensed with the term "credibility" because it was not used in the regulations.   *See Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (Oct. 25, 2017).

substantial evidence.  *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).   Factors that the ALJ may consider in evaluating the claimant's subjective complaints include:   (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss.   *Falco, supra*; *see also* 20 C.F.R.§§404.1529(c)(3)(i)-(vii).

The ALJ complied with the foregoing requirements in this case.   She dutifully recounted the hearing testimony provided by plaintiff.   (Tr. 33).   Ultimately, however, she determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record for reasons set forth in the decision.   *Id.*

For example, she noted that in October 2015, plaintiff complained to the chiropractor that his pain was a 6/10, but by the next month, it had dropped to a 4/10 that was present only 60 percent of the time.   (Tr. 33-34).   She further noted that in April 2016, plaintiff told Dr. Storey that his pain was a 4/10 in severity, but 10/10 when ambulating for long periods.   (Tr. 34).

Plaintiff takes issue with the ALJ's statement that he "generally" rated his pain as a 4-5/10 in severity, with exacerbation from prolonged standing and walking.   (Tr. 35).   However,

19

plaintiff rated his pain as a 4 or 5 out of 10 on six occasions, and as a 6/10 on one occasion.   (Pl. Brief, pgs. 17-18).   The only health care provider to whom plaintiff described a higher degree of pain severity was Dr. Foust, who also happened to be the physician who encouraged him to apply for disability.

As it turns out, however, Dr. Foust's statements regarding the effects of plaintiff's impairments generally were consistent with the ALJ's findings.   Indeed, Dr. Foust opined, and the ALJ found, that plaintiff could not perform the exertional demands of his past relevant work. Where the ALJ and Dr. Foust parted company was whether plaintiff was able to perform other work in the national economy.   Dr. Foust believed that plaintiff's impairments rendered any type of work impossible.   He also added his impression that given plaintiff's age, education, and prior work experience, he would not be capable of other work.

Of course, a physician's statement that a claimant is "disabled" or "unable to work" is not accorded any special significance under the regulations.   *See* 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).   Further, whether or not plaintiff's RFC permits him to make an adjustment to other work in the national economy is an issue reserved for the ALJ.   In lieu of relying on Dr. Foust's impression in this area, the ALJ ultimately credited the testimony of an experienced vocational expert who specializes in job placement and who has access to resources that catalog and describe the specific requirements for the multitude of jobs that are available throughout the national economy.

Furthermore, it is readily apparent that the ALJ's assessment of the effects of plaintiff's impairments was heavily influenced by the opinion of the non-examining agency physician, Dr. Meriwether.   *See* Tr. 35.   It is worth noting, however, that the ALJ did not simply endorse Dr.

20

Meriwether's assessment, without question.   Instead, she credited plaintiff's consistent complaints of increased pain with prolonged standing and walking by requiring him to have a sit/stand option every 30 minutes, and by limiting him to only four hours of standing/walking. (Tr. 35).   In other words, the ALJ ended up partially crediting plaintiff's subjective description of his symptoms.

Finally, no one questions that plaintiff suffers from a significant and severe impairment that is supported by objective testing.   The issue is the limiting effects of the impairment.   Here, in addition to the findings of the agency physician, the ALJ further noted the gap in medical treatment, as well as the conservative treatment that plaintiff elected to receive.   Although plaintiff received a recommendation for surgery, he declined that option in favor of treatment with non-steroidal anti-inflammatories.   Certainly, if, as plaintiff now seems to contend, his pain was consistently a 9/10, i.e. of the utmost severity and intensity, it stands to reason that he would have sought more frequent and/or more significant medical intervention than what the record currently reflects.

In sum, the court finds that the ALJ's assessment of plaintiff's subjective complaints and symptoms satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence.   *See Giles v. Astrue*, 433 Fed. Appx. 241, 249 (5th Cir.2011) (ALJ's appraisal of plaintiff's subjective complaints is supported by his discussion of medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 905–06 (5th Cir.2010) (ALJ complied with SSR 96-7p [now SSR 16-3p] by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. 2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's resolution of subjective evidence); *Cornett v.*

21

*Astrue*, 261 Fed. Appx. 644 (5th Cir. 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 278 Fed. Appx. 333 (5th Cir. 2008) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled.   In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence by no means was uniform and could have supported a different outcome.   Such conflicts in the evidence, however, are for the Commissioner to resolve.   *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).   This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."   *Newton, supra*.[8]   That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.   *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[9]

---

[8] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below."   *January v. Astrue,* 400 Fed. Appx. 929 (5th Cir.2010) (citation omitted).   One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result.   *Id.*   This exception is applicable here.   Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence.   *See e.g., Foster v. Astrue*, 410 Fed. Appx. 831 (5th Cir. 2011); *Garth, supra*.

[9] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."   *Morris, supra*.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.   Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 8th day of October 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE